UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DOROTHY GAIL COLLETT, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-11144**<br>**C/W 19-12252** |
| **WEYERHAEUSER COMPANY, ET AL.** | **SECTION "L" (5)** |

## ORDER & REASONS

Before the Court are Defendant Weyerhaeuser Company's Motions for Summary Judgment. R. Docs. 21, 28. Plaintiff Dorothy Gail Collett opposes the motion relating to her case, R. Doc. 40, and Plaintiff Joshua Collett opposes the motion relating to his case, R. Doc. 41. Defendant Weyerhaeuser Company filed a reply. R. Doc. 48.

### I. BACKGROUND

Plaintiffs Dorothy Gail Collett and Joshua Collett ("Plaintiffs") brought suit against Defendants Weyerhaeuser Company ("Weyerhaeuser"), Thornhill Forestry Service, Inc. ("Thornhill"), and Lafayette Insurance Company ("Lafayette Insurance") for damages they allegedly sustained from chemical exposure at their residence. R. Doc. 24 at 1, 3; R. Doc. 46 at 2–3. Specifically, Plaintiffs allege they were exposed to formaldehyde in the 1980s that left them with severe immunological and autoimmune disorders and other health problems, causing them to live in a highly controlled environment to control their symptoms. R. Doc. 24 at 2; R. Doc. 46 at 2–3. Because of this prior exposure and subsequent health problems, Plaintiff Dorothy Gail Collett contends she has communicated regularly with the Louisiana Department of Transportation and Development and Weyerhaeuser to have these entities avoid spraying chemicals in the vicinity of her property. R. Doc. 24 at 2. Plaintiffs aver that for 23 years, the Louisiana Department of

Transportation has refrained from spraying within a two-mile radius of the Collett household, and for over 18 years, the local Weyerhaeuser office also avoided spraying chemicals within two miles of her property. R. Doc. 24 at 3; R. Doc. 46 at 2. However, Plaintiffs allege that on July 6, 2018, without any warning, employees and/or contractors of Weyerhaeuser sprayed multiple chemicals in close proximity to the Collett residence. R. Doc. 24 at 3; R. Doc. 46 at 3. Plaintiffs further contend the Thornhill crew were approached to stop spraying the chemicals by various entities, but they refused to do so, and the Thornhill crew returned again the following day and continued spraying. R. Doc. 24 at 3; R. Doc. 46 at 3.

Plaintiffs allege the spraying led to chemical exposure that caused multiple, devastating illnesses to Plaintiff Dorothy Gail Collett and aggravated preexisting conditions in Plaintiff Joshua Collett that have required medical treatment. R. Doc. 24 at 3; R. Doc. 46 at 3. Plaintiffs contend Defendants' acts and omissions amount to negligence, gross negligence, and violations of state statutes and regulations. R. Doc. 24 at 4; R. Doc. 46 at 3–4. Plaintiffs assert they have suffered and continue to suffer severe physical injury, mental anguish and financial loss, including the following: (1) severe aggravation of immunological and allergic health problems; (2) fear of severe and continuing injury, cancer and other ailments, including potential death, as a result of the chemical exposure; (3) loss of enjoyment of life; (4) Plaintiff Dorothy Gail Collett's displacement from her home during a period of cleaning and decontamination of the property; (5) an increase in past, present and future medical, living and rehabilitation expenses, and (6) other damages to be proven at trial. R. Doc. 24 at 5; R. Doc. 46 at 4–5. Plaintiffs seek damages, a preliminary injunction prohibiting spraying of chemicals within a 2-mile radius of the Collett property during the pendency of this action, a permanent injunction prohibiting the spraying of chemicals within a 2-

mile radius of the Collett property, and court costs, expert witness fees, attorney's fees and any other costs. R. Doc. 24 at 6–7; R. Doc. 46 at 6.

Weyerhaeuser denies the allegations and presents numerous affirmative defenses, including but not limited to the following: Plaintiffs' Petition fails to state a claim upon which relief can be granted; Plaintiffs' claims are barred by the applicable prescriptive periods or, alternatively, by the doctrine of laches; any injuries or damages to Plaintiffs were caused or contributed by independent, intervening or superseding acts or omissions of others for whose acts Weyerhaeuser has no liability; any injuries or damages to Plaintiffs were caused, solely or in part, by Plaintiffs' own negligence or contributory negligence; Plaintiffs failed to exhaust administrative remedies; Plaintiffs' claims are barred by the doctrine of waiver and estoppel; and Plaintiffs failed to mitigate damages. R. Docs. 30, 49. Thornhill also denies the allegations and presents numerous affirmative defenses, including but not limited to the following: Plaintiffs' claims are prescribed and/or time barred; Plaintiffs' damages are the result of pre-existing conditions and/or causes unrelated to the incident(s) related to this litigation; Thornhill was not negligent and/or did not breach any duty owed to Plaintiffs; and the incident(s) sued upon were caused due to the fault and/or negligence of third parties. R. Doc. 19.

## II. PRESENT MOTION

In these two motions, Weyerhaeuser moves for summary judgment against both Plaintiffs, seeking a full dismissal with prejudice of all claims by Plaintiffs. R. Doc. 21 at 1; R. Doc. 28 at 1. Specifically, Weyerhaeuser argues there is no genuine issue of material fact and it is entitled to judgment in its favor as a matter of law for the following reasons: (1) "Plaintiffs' claims of an 'oral promise' by Weyerhaeuser never to apply any chemicals within a two-mile radius of Plaintiff[s'] residence are unenforceable as a matter of law because they would impose a negative servitude of

3

unlimited duration, and Louisiana law requires such servitudes to be in writing to be enforceable" and (2) "Plaintiff[s'] claims against Weyerhaeuser sounding in negligence fail because Weyerhaeuser hired an independent contractor, Thornhill . . . to perform the work, and Weyerhaeuser is not individually or solidarily liable for the herbicide application at issue." R. Doc. 21 at 1; R. Doc. 28 at 1. For the latter argument, Weyerhaeuser avers it informed Thornhill of the presence of a "sensitive neighbor" and even if Thornhill did act negligently, Weyerhaeuser is not liable for any negligent acts of its independent contractor as a matter of Louisiana law. R. Doc. 21-2 at 1; R. Doc. 28-2 at 1. Moreover, Weyerhaeuser contends Plaintiffs' attempt to skirt Louisiana's independent contractor law fails because herbicide application is not an ultrahazardous activity. R. Doc. 21-2 at 2; R. Doc. 28-2 at 1–2. Weyerhaeuser thus argues Plaintiffs' claims against it must be dismissed. R. Doc. 21-2 at 2; R. Doc. 28-2 at 2.

In opposition, Plaintiffs alleges Weyerhaeuser's motions for summary judgment suffer from numerous defects, each of which provide grounds for denial of the motions. R. Doc. 40 at 1; R. Doc. 41 at 1. First, Plaintiffs contend Weyerhaeuser filed the motions prematurely and without affording Plaintiffs the opportunity to engage in "adequate discovery." R. Doc. 40 at 1; R. Doc. 41 at 1. Second, Plaintiffs argue Weyerhaeuser's motions provide an "overly limited, distorted version of the legal underpinnings of this action," R. Doc. 40 at 1; R. Doc. 41 at 1–2, meaning that Plaintiffs believe the facts pleaded in their petitions give rise to broader legal theories than the ones Weyerhaeuser references in its motions, R. Doc. 40 at 6; R. Doc. 41 at 7. Finally, Plaintiffs assert Weyerhaeuser "presents an incomplete and distorted factual picture, portions of which are inadmissible." R. Doc. 40 at 1; R. Doc. 41 at 2.

In reply, Weyerhaeuser reiterates that it is entitled to summary judgment because Plaintiffs' claims are barred as a matter of law, as Plaintiffs have conceded there was no written agreement

between the parties, have conceded there was no promise about not spraying in a "two-mile radius," have effectively conceded that Weyerhaeuser never relinquished the right to have its timberlands treated with herbicide, and have offered no evidence to rebut the fact that Weyerhaeuser did not perform any spraying activities. R. Doc. 48 at 1. Moreover, Weyerhaeuser also emphasizes that Plaintiffs have not rebutted the fact that it hired an independent contractor—Thornhill—to conduct the spraying and Weyerhaeuser alerted Thornhill to the existence of a "sensitive neighbor" nearby. R. Doc. 48 at 1–2. Finally, Weyerhaeuser argues Plaintiffs' attempts to insert a nuisance claim under Civil Code Article 667 are improper because there is no mention of any nuisance claim in any of the Original or Amended Petitions and the deadline for amending the Petitions has passed. R. Doc. 48 at 6.

### III. LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). When ruling on a motion for summary judgment, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Moreover, the court must assess the evidence and "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). But "unsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Anderson*, 477 U.S. at 249–50.

## IV. DISCUSSION

Weyerhaeuser moves for summary judgment on Plaintiffs' claims that: (1) Weyerhaeuser made an "oral promise" to never apply chemicals within a two-mile radius of Plaintiffs' residence and (2) Weyerhaeuser was negligent in its actions regarding the herbicide application. R. Doc. 21-2 at 1; R. Doc. 28-2 at 1. The Court will consider Weyerhaeuser's arguments on each of these claims in turn.

### A. **Whether the alleged "oral promise" by Weyerhaeuser is enforceable**

"Negative servitudes are those that impose on the owner of the servient estate the duty to abstain from doing something on his estate." La. Civ. Code Art. 706. Louisiana courts have concluded that servitudes affecting immovable property that are created by agreement must be in writing. *See Heirs of Primeaux v. Erath Sugar Co.*, 484 So.2d 717, 720 (La. App. 3d Cir. 2/20/86) (citing *Langevin v. Howard*, 363 So.2d 1209, 1214 (La. App. 2d Cir. 9/25/78)) ("Conventional predial servitudes and personal servitudes affecting immovable property which are created by

agreement between the parties must be in writing."); *see also Langevin*, 363 So.2d at 1215 ("The creation of a personal servitude over real property creates an interest in the property and for this reason must be in writing.").

Meanwhile, pursuant to Louisiana Civil Code Article 667:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

La. Civ. Code Art. 667. Recovery for damages under article 667 is not limited to only movable and immovable property, but also include personal injuries. *Dean v. Hercules, Inc.*, 328 So.2d 69, 73 (La. 1976) (internal citation omitted) ("[Article] 667 is not limited in its operation to damage to immovable property . . . Article 667 seems to encompass liability for personal injuries."). The article requires proof of negligence on the part of the offending landowner, rather than strict liability. *Tort Reform—Elimination of Strict Liability for Damage Caused by Vice or Defect in Things or Buildings, by an Animal, or by Proprietor's Use of Own Property*, 1996 La. Sess. Law Serv. 1st Ex. Sess. Act 1 (H.B. 18). Moreover, a property owner who leases his property or hires a contractor to conduct activity on the owner's land might be found liable under Article 667 for damages caused to neighbors by that activity. *Yokum v. 615 Bourbon Street, L.L.C.*, 2007-1785 (La. 2/26/08), 977 So.2d 859, 875 ("[T]his Court has also stated that 'the proprietor is likewise responsible not only for his own activity, but also for that carried on by his agents, contractors and representatives with his consent and permission.'") (internal citation omitted); *Lombard v. Sewerage & Water Bd. of New Orleans*, 284 So.2d 905, 912 (La. 1973) ("And the proprietor is likewise responsible not only for his own activity, but also for that carried on by his agents,

contractors and representatives with his consent and permission. This liability which the law imposes attaches also to the agent or contractor, who, as in this case, becomes solidarily liable with the proprietor if his activity causes damage to a neighbor.") (internal citation omitted) ; *see also Kenner Plumbing Supply, Inc. v. Rusich Detailing, Inc.*, 14-922 (La. App. 5 Cir. 9/23/15), 175 So.3d 479, 500; *Ictech-Bendeck v. Progressive Waste Sols. of Louisiana, Inc.*, 367 F. Supp. 3d 555, 566 (E.D. La. 2019).

Weyerhaeuser argues Plaintiffs' claims that Weyerhaeuser had promised "never to disburse any chemicals within a two-mile radius of Plaintiff[s] residence would impose a servitude of unlimited duration on Weyerhaeuser's property." R. Doc. 21-2 at 6; R. Doc. 28-2 at 6. As such, under Louisiana law, this negative servitude to indefinitely restrict Weyerhaeuser's ability to use chemicals on its own property must be in writing to be enforceable. R. Doc. 21-2 at 7; R. Doc. 28-2 at 7. Weyerhaeuser contends that because Plaintiffs do not even allege the existence of such a written agreement, Weyerhaeuser is entitled to summary judgment on this claim. R. Doc. 21-2 at 7; R. Doc. 28-2 at 7.

In opposition, Plaintiffs assert Weyerhaeuser's motion narrows Plaintiffs' Petitions for Damages to just two legal theories, but in actuality, the facts pleaded in Plaintiffs' Petitions "give rise to much broader legal theories, which require factual discovery to fully resolve." R. Doc. 40 at 6; R. Doc. 41 at 7. Plaintiffs emphasize that under Louisiana law, a plaintiff need not plead the theory of his case in the petition, as fact pleadings are only required. *Glasgow v. PAR Minerals Corp.*, 2010-2011 (La. 5/10/11), 70 So.3d 765, 771 (citing *Wright v. Louisiana Power & Light*, 2006–1181, p. 15 (La. 3/9/07), 951 So.2d 1058, 1069).

In reply, Weyerhaeuser first contest Plaintiffs' attempt at introducing "back-door nuisance claims," as Plaintiffs' Original and Amended Petitions make no mention of these claims and the

deadline for amending the Petitions has passed. R. Doc. 48 at 6. Weyerhaeuser also points to the fact that the Fifth Circuit has noted, "[U]nder Rule 8 of the Federal Rules of Civil Procedure, it is enough that the plaintiff plead sufficient facts to put the defense on notice of the theories on which the complaint is based." *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 357 (5th Cir. 2008) (quoting *Wellborn v. Sears, Roebuck & Co.*, 970 F.2d 1420, 1425 (5th Cir.1992)). Weyerhaeuser argues Plaintiffs' Petitions do not meet this standard with respect to nuisance claims. R. Doc. 48 at 6. However, Weyerhaeuser contends, even if Plaintiffs' intention to bring nuisance claims could be inferred from their Petitions, Plaintiffs' have not sufficiently alleged facts that establish the elements required to bring an Article 667 nuisance claim. R. Doc. 48 at 6. For example, Weyerhaeuser states Plaintiffs have offered no evidence to show the chemical sprayed by Thornhill on Weyerhaeuser's lands was toxic or has any adverse health effects on humans. R. Doc. 48 at 6. Weyerhaeuser also reiterates its argument that Plaintiffs have not provided any evidence of a written agreement by which Weyerhaeuser agreed not to spray herbicides on its timberlands within a ½-mile radius of Plaintiffs' residence,[1] and so Plaintiffs' allegations of an oral promise are unenforceable as a matter of law. R. Doc. 48 at 8.

Because the Court must assess the evidence and "review the facts drawing all inferences most favorable to the party opposing the motion [for summary judgment]," *Reid*, 784 F.2d at 578, the Court concludes it is feasible that Plaintiffs' pleadings can be interpreted to include Article 667 claims. Weyerhaeuser's alleged "oral promise" could be used to show Weyerhaeuser "knew or . . . should have known" its works would cause damage under Article 667. Therefore, the Court cannot conclude at this stage in the litigation that there are no genuine issues of material fact with respect

---

[1] Plaintiffs have amended their allegations that Weyerhaeuser had agreed not to spray within a 2-mile radius of Plaintiffs' home to a ½-mile radius. R. Doc. 40 at 3; R. Doc. 41 at 3.

to Weyerhaeuser's alleged oral promise. However, to the extent that Plaintiffs are seeking to enforce Weyerhaeuser's alleged oral promise as a negative servitude, it is not enforceable under Louisiana law unless there is evidence of a written agreement. Further discovery may be warranted on this issue.

### B. **Whether Weyerhaeuser was negligent**

Pursuant to Louisiana's general negligence statute, Article 2315, a plaintiff must prove five elements to establish that liability exists under the facts of a particular case: "(1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages." *S.J. v. Lafayette Parish Sch. Bd.*, 2009-2195 (La. 7/6/10), 41 So.3d 1119, 1125 (citing *Pinsonneault v. Merchants & Farmers Bank & Trust Co.,* 01–2217, p. 6 (La. 4/3/02), 816 So.2d 270, 275–76). The inquiry into whether a duty is owed is a question of law, while the inquiry into whether a defendant has breached a duty owed is a question of fact. *Id.* (internal citation omitted).

Moreover, "Louisiana law provides the general rule that a principal is not liable for the negligent acts of an independent contractor acting pursuant to the contract." *Graham v. Amoco Oil Co.*, 21 F.3d 643, 645 (5th Cir. 1994) (citing *Bartholomew v. CNG Producing Co.*, 832 F.2d 326, 329 (5th Cir. 1987); *Hawkins v. Evans Cooperage Co.*, 766 F.2d 904, 906 (5th Cir. 1985)). This rule has been interpreted in context of a property owner-independent contract relationship as well, as property owners are generally not liable for the negligence of their independent contractors. *Davenport v. Amax Nickel, Inc.,* 569 So.2d 23, 27 (La. App. 4 Cir. 10/11/90). However, a property owner may be held liable for the actions of an independent contractor if "the contractor is

performing ultra-hazardous work" or if the property owner "exercises control over the contractor's methods of operation or gives express or implied authorization to an unsafe practice." *Morales v. Davis Bros. Const. Co., Inc.,* 94–0902, p. 3 (La. App. 4 Cir. 12/15/94), 647 So.2d 1302, 1305 (internal citations omitted). Finally, for claims brought pursuant to Louisiana Civil Code Article 667, "the proprietor is answerable for damages without regard to his knowledge or his exercise of reasonable care, if the damage is caused by an ultrahazardous activity. An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives." La. Civ. Code Art. 667.

Weyerhaeuser argues Plaintiffs' claims of direct negligence against Weyerhaeuser and claims of negligence for the activities of Weyerhaeuser's independent contractor fail as a matter of law because the facts show Weyerhaeuser did not perform the spraying activity itself, Weyerhaeuser contends it informed Thornhill about the presence of a "sensitive neighbor" nearby, and the spraying activity was not ultrahazardous. R. Doc. 21-2 at 7; R. Doc. 28-2 at 7.

In opposition, Plaintiffs assert there is a possibility that someone at Weyerhaeuser was negligent in "communication with the sprayers, communication among themselves, their record-keeping and in their communication with Ms. Collett." R. Doc. 40 at 9; R. Doc. 41 at 9. Plaintiffs argue there is need for more discovery before the facts central to Weyerhaeuser's potential liability under Articles 667 and 2315 and breach of an oral promise can be established. R. Doc. 40 at 9; R. Doc. 41 at 9. Plaintiffs also contend that even if Weyerhaeuser were to escape liability under Article 2315 because the spraying was conducted by an independent contractor, Weyerhaeuser may still be liable under Article 667. R. Doc. 40 at 9; R. Doc. 41 at 9. Finally, Plaintiffs urge that Weyerhaeuser would only be insulated from tort liability for the negligent acts of its independent

contractor, but it would still remain liable for its own acts of negligence. R. Doc. 40 at 9; R. Doc. 41 at 9.

In reply, Weyerhaeuser reiterates that Plaintiffs have not and cannot meet the elements required to establish liability under Article 2315, as Plaintiffs do not dispute that Weyerhaeuser did not directly apply the herbicide at issue. R. Doc. 48 at 9. Moreover, Weyerhaeuser contends Plaintiffs have still failed to sufficiently contest the liability limitations imposed on independent contractor relationships under Louisiana law, and so Plaintiffs' negligence claims against Weyerhaeuser should be dismissed. R. Doc. 48 at 9.

After assessing the evidence and reviewing the facts, while also "drawing all inferences most favorable to the party opposing the motion [for summary judgment]," *Reid*, 784 F.2d at 578, the Court concludes genuine issues of material fact remain with respect to Plaintiffs' negligence claims against Weyerhaeuser. Although the spraying in question may not be an ultrahazardous act that generates liability for the actions of an independent contractor, it is still unclear whether Weyerhaeuser "exercise[d] control over the contractor's methods of operation or [gave] express or implied authorization to an unsafe practice." *See Morales,* 647 So.2d at 1305. Moreover, Plaintiffs' claim that someone at Weyerhaeuser might have been negligent in its communication with the sprayers regarding their "sensitive neighbor," combined with Weyerhaeuser's alleged oral promise, may be sufficient to establish liability under Article 667. Further discovery may also be warranted on this issue.

## V. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendant Weyerhaeuser Company's Motions for Summary Judgment, R. Docs. 21 and 28, are hereby **DENIED WITHOUT PREJUDICE AS**

**PREMATURE**. The Court finds that summary judgment is not appropriate at this time as the facts of the case have yet to be fully discovered. However, the movant may re-file these motions at a later date, as needed.

    New Orleans, Louisiana, this 20th day of November, 2019.

ELDON E. FALLON<br>
U.S. DISTRICT COURT JUDGE