UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DOROTHY GAIL COLLETT, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-11144**<br>**C/W 19-12252** |
| **WEYERHAEUSER COMPANY, ET AL.** | **SECTION "L" (5)** |

## ORDER AND REASONS

Before the Court are defendant Weyerhaeuser Company's Motion for Summary Judgment, R. Doc. 83, and defendant Thornhill's Motion for Summary Judgment, R. Doc. 78. Plaintiffs filed memoranda in opposition to these motions, R. Docs. 121 and 85. Thornhill and Weyerhaeuser replied to Plaintiffs' opposition memoranda, R. Docs. 113 and 127. The Court held oral argument on September 2, 2020. The Court now rules as follows:

**I.   BACKGROUND**

Plaintiffs Dorothy Gail Collett and Joshua Collett ("Plaintiffs") filed suit against Defendants Weyerhaeuser Company ("Weyerhaeuser"), Thornhill Forestry Service, Inc. ("Thornhill"), and Lafayette Insurance Company ("Lafayette Insurance") for damages they allegedly sustained from chemical exposure at their residence. R. Docs. 24 at 1, 3; 46 at 2–3. Specifically, Plaintiffs allege that their exposure to formaldehyde in the 1980s left them with severe immunological and autoimmune disorders and other health problems, forcing them to live in a highly controlled environment to control their symptoms. R. Docs. 24 at 2; 46 at 2–3. Because of this prior exposure and subsequent health problems, Plaintiff Dorothy Gail Collett contends she has communicated regularly with the Louisiana Department of Transportation and Development and Weyerhaeuser, a timberland company, to ensure these entities avoid spraying chemicals near

her property. R. Doc. 24 at 2. Plaintiffs aver that for 23 years, the Louisiana Department of Transportation has refrained from spraying within a two-mile radius of the Collett household, and for over 18 years, the local Weyerhaeuser office avoided spraying chemicals in this radius. R. Docs. 24 at 3; 46 at 2. However, Plaintiffs allege that on July 6, 2018, Thornhill, Weyerhaeuser's contractor, sprayed multiple chemicals in close proximity to the Collett residence. R. Docs. 24 at 3; 46 at 3. Plaintiffs further contend the Thornhill crew was approached to stop spraying the chemicals by various entities, but Thornhill refused to stop. R. Docs. 24 at 3; 46 at 3. Moreover, Plaintiffs contend that the crew returned again the following day and continued spraying. R. Docs. 24 at 3; 46 at 3.

Plaintiffs allege the spraying led to chemical exposure that caused multiple, devastating illnesses to Plaintiff Dorothy Gail Collett and aggravated preexisting conditions in Plaintiff Joshua Collett, requiring them to seek medical treatment. R. Docs. 24 at 3; 46 at 3. Plaintiffs contend Defendants' acts and omissions amount to negligence, gross negligence, and violations of state statutes and regulations. R. Docs. 24 at 4; 46 at 3–4. Plaintiffs assert they have suffered and continue to suffer severe physical injury, mental anguish and financial loss. R. Docs. 24 at 5; 46 at 4–5. Plaintiffs seek damages, a preliminary injunction prohibiting spraying of chemicals within a 2-mile radius of the Collett property during the pendency of this action, a permanent injunction prohibiting the spraying of chemicals within a 2-mile radius of the Collett property, and court costs, expert witness fees, attorney's fees and any other costs. R. Docs. 24 at 6–7; 46 at 6.

Weyerhaeuser denies the allegations and presents numerous affirmative defenses, including but not limited to the following: Plaintiffs' Petition fails to state a claim upon which relief can be granted; Plaintiffs' claims are barred by the applicable prescriptive periods or, alternatively, by the doctrine of laches; any injuries or damages to Plaintiffs were caused or

contributed by independent, intervening or superseding acts or omissions of others for whose acts Weyerhaeuser has no liability; any injuries or damages to Plaintiffs were caused, solely or in part, by Plaintiffs' own negligence or contributory negligence; Plaintiffs failed to exhaust administrative remedies; Plaintiffs' claims are barred by the doctrine of waiver and estoppel; and Plaintiffs failed to mitigate damages. R. Docs. 30; 49. Thornhill also denies the allegations and presents numerous affirmative defenses, including but not limited to the following: Plaintiffs' claims are prescribed and/or time barred; Plaintiffs' damages are the result of pre-existing conditions and/or causes unrelated to the incident(s) related to this litigation; Thornhill was not negligent and/or did not breach any duty owed to Plaintiffs; and the incident(s) sued upon were caused due to the fault and/or negligence of third parties. R. Doc. 19.

In August 2019, before discovery was completed, Weyerhaeuser moved for summary judgment on Plaintiffs' claims that (1) Weyerhaeuser made an "oral promise" to never apply chemicals within a two-mile radius of Plaintiffs' residence and (2) Weyerhaeuser was negligent in its actions regarding the herbicide application. R. Docs. 21-2 at 1; 28-2 at 1. The Court concluded that it was premature to grant summary judgment on both claims because, at that stage of the litigation, there were genuine issues of material fact with respect to these claims. R. Doc. 50 at 9-10, 12. However, the Court noted "to the extent that Plaintiffs are seeking to enforce Weyerhaeuser's alleged oral promise as a negative servitude, it is not enforceable under Louisiana law unless there is evidence of a written agreement. Further discovery may be warranted on this issue. *Id.* at 10. Now that discovery is completed, Weyerhaeuser again requests that the Court grant summary judgment on these claims. R. Doc. 83. Thornhill filed its first motion for summary judgment in this case on June 22, 2020. R. Doc. 78.

II.   **PRESENT MOTIONS**

      a. **Weyerhaeuser's Motion for Summary Judgment [R. Doc. 83]**

In the present motion, Weyerhaeuser moves for summary judgment, seeking full dismissal with prejudice of all claims filed against it. R. Doc. 83 at 1. Weyerhaeuser notes that eight months have passed since its previous motions for summary judgment were denied by the Court. R. Doc. 83-1 at 9. Weyerhaeuser argues that after months of additional discovery, "it is now apparent that Plaintiffs' various claims fail as a matter of law, and Weyerhaeuser must be fully dismissed from this action." *Id.* at 2.

Weyerhaeuser references the Court's decision that the spraying in question is not an ultrahazardous activity and that a factual dispute exists in the degree of Weyerhaeuser's operational control over Thornhill. *Id.* (citing R. Doc. 50 at 12). Weyerhaeuser contends the relevant depositions and employment contracts definitively show that it did not exercise the level of control over Thornhill required under Fifth Circuit case law. *Id.*

      b. **Thornhill's Motion for Summary Judgment [R. Doc. 78]**

On June 22, 2020, Thornhill moved for summary judgment on all claims alleged against it by Plaintiffs. R. Doc. 78. Thornhill believes there is no genuine dispute of material fact with regard to Thornhill's spraying operations. R. Doc. 78-2 at 6.

**III.   APPLICABLE LAW**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). When ruling on a motion for summary judgment, a court may not resolve credibility issues or weigh evidence. *See Delta &*

*Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Moreover, the court must assess the evidence and "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). But "unsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Anderson*, 477 U.S. at 249–50).

## IV. DISCUSSION

Weyerhaeuser moves for summary judgment on the following claims: (1) Weyerhaeuser made an "oral promise" to never apply chemicals within a two-mile radius of Plaintiffs' residence; (2) Weyerhaeuser was vicariously negligent with regard to Thornhill's herbicide application; (3) "[a]ny other negligence claims Plaintiffs have against Weyerhaeuser;" and (4) Weyerhaeuser violated Louisiana Civil Code Article 667. R. Doc. 83 at 1-2. Weyerhaeuser also contends that

Plaintiffs' "vague statutory violation claims must be dismissed." *Id.* at 23. Thornhill does not move for summary judgment on specific claims but instead requests that the Court grant summary judgment dismissing all Plaintiffs' claims against it. In support, Thornhill argues that there are no contested issues of material fact with regard to Thornhill's spraying operations. The Court will consider Weyerhaeuser and Thornhill's arguments in turn.

### A. Whether the alleged "oral promise" by Weyerhaeuser creates a duty to the Plaintiffs

"Negative servitudes are those that impose on the owner of the servient estate the duty to abstain from doing something on his estate." La. Civ. Code Art. 706. Louisiana courts have concluded that servitudes affecting immovable property that are created by agreement must be in writing. *See Heirs of Primeaux v. Erath Sugar Co.*, 484 So.2d 717, 720 (La. App. 3d Cir. 2/20/86) (citing *Langevin v. Howard*, 363 So.2d 1209, 1214 (La. App. 2d Cir. 9/25/78)) ("Conventional predial servitudes and personal servitudes affecting immovable property which are created by agreement between the parties must be in writing."); *see also Langevin*, 363 So.2d at 1215 ("The creation of a personal servitude over real property creates an interest in the property and for this reason must be in writing."). Since there is no writing in the instant dispute, there can be no negative servitude. But the inquiry does not end here. Even in the absence of a writing, Article 667 imposes a duty to refrain from depriving one's neighbor of enjoyment of his property when the tortfeasor should have known that his actions would cause damage. This provision states:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

La. Civ. Code Art. 667 (2019).

Recovery under Article 667 includes damage to movable and immovable property, as well as damages resulting from personal injuries. *Dean v. Hercules, Inc.*, 328 So.2d 69, 73 (La. 1976) (internal citation omitted) ("[Article] 667 is not limited in its operation to damage to immovable property . . . Article 667 seems to encompass liability for personal injuries."). To recover damages, however, the state law requires proof of negligence on the part of the offending landowner, rather than strict liability. *See Tort Reform—Elimination of Strict Liability for Damage Caused by Vice or Defect in Things or Buildings, by an Animal, or by Proprietor's Use of Own Property*, 1996 La. Sess. Law Serv. 1st Ex. Sess. Act 1 (H.B. 18); Maraist, Frank and Galligan, Thomas, *Burying Caesar: Civil Justice Reform and the Changing Face of Louisiana Tort Law*, 71 Tul. L. Rev. 339, 362-63 (1996). Furthermore, a property owner who leases his property or hires a contractor to conduct activity on the owner's land might still be found liable under Article 667 for damages caused to neighbors by that activity. *Yokum v. 615 Bourbon Street, L.L.C.*, 2007-1785 (La. 2/26/08), 977 So.2d 859, 875 ("[T]his Court has also stated that 'the proprietor is likewise responsible not only for his own activity, but also for that carried on by his agents, contractors and representatives with his consent and permission.'") (internal citation omitted); *Lombard v. Sewerage & Water Bd. of New Orleans*, 284 So.2d 905, 912 (La. 1973) ("And the proprietor is likewise responsible not only for his own activity, but also for that carried on by his agents, contractors and representatives with his consent and permission. This liability which the law imposes attaches also to the agent or contractor, who, as in this case, becomes solidarily liable with the proprietor if his activity causes damage to a neighbor.") (internal citation omitted); *see also Kenner Plumbing Supply, Inc. v. Rusich Detailing, Inc.*, 14-922 (La. App. 5 Cir. 9/23/15), 175 So.3d 479, 500; *Ictech-Bendeck v. Progressive Waste Sols. of Louisiana, Inc.*, 367 F. Supp. 3d 555, 566 (E.D. La. 2019).

The Court must assess the evidence and "review the facts drawing all inferences most favorable to the party opposing the motion [for summary judgment]," *Reid*, 784 F.2d at 578. The Court concludes that while there is no negative servitude, there are genuine issues of material fact as to whether "Weyerhaeuser's alleged 'oral promise' could be used to show Weyerhaeuser 'knew or . . . should have known' its works would cause damage under Article 667." R. Doc. 50 at 9. Plaintiffs allege that an oral promise was made by Weyerhaeuser to Ms. Collett. Regardless of whether the promise described a half-mile or a one-fourth mile buffer, this alleged oral promise raises a fact issue as to whether Weyerhaeuser knew or should have known its spraying operation would injure the Plaintiffs. R. Doc. 50 at 9. Therefore, the Court cannot conclude at this stage in the litigation that there are no genuine issues of material fact with respect to the existence and significance of Weyerhaeuser's alleged oral promise. Nevertheless, the Court may have to consider this again on a post-trial motion under Rule 50 of the Federal Rules of Civil Procedure.

### B. **Whether Weyerhaeuser is vicariously liable for Thornhill's alleged negligence**

When a claim is brought under Article 2315 of the Louisiana Civil Code, property owners are generally not liable for the negligence of their independent contractors. *Davenport v. Amax Nickel, Inc.,* 569 So.2d 23, 27 (La. App. 4 Cir. 10/11/90). "Louisiana law provides the general rule that a principal is not liable for the negligent acts of an independent contractor acting pursuant to the contract." *Graham v. Amoco Oil Co.*, 21 F.3d 643, 645 (5th Cir. 1994) (citing *Bartholomew v. CNG Producing Co.*, 832 F.2d 326, 329 (5th Cir. 1987); *Hawkins v. Evans Cooperage Co.*, 766 F.2d 904, 906 (5th Cir. 1985)). However, a property owner may be held liable for the actions of an independent contractor when "the contractor is performing ultra-hazardous work," as well as when property owner "exercises control over the contractor's methods of operation or gives express or implied authorization to an unsafe practice." *Morales v. Davis Bros. Const. Co.,*

*Inc.,* 94–0902, p. 3 (La. App. 4 Cir. 12/15/94), 647 So.2d 1302, 1305 (internal citations omitted). The Court resolved the hazardousness inquiry in its November 2019 Order, holding that herbicide spraying does not constitute an ultrahazardous activity. R. Doc. 50 at 12. The Court explained, however, that "it is still unclear whether Weyerhaeuser 'exercise[d] control over the contractor's methods of operation or [gave] express or implied authorization to an unsafe practice'" and that further discovery was warranted. *Id.* The Court now examines Weyerhaeuser's renewed motion on this issue.

As a preliminary matter, Weyerhaeuser argues it was not negligent because Weyerhaeuser itself never sprayed the herbicide and Thornhill, its independent contractor, did not spray negligently. R. Doc. 83-1 at 11-12. Weyerhaeuser argues that even if Thornhill *did* act negligently, Weyerhaeuser cannot be liable for any negligent acts of Thornhill as a matter of law in the Fifth Circuit. *Id.* Weyerhaeuser contends there is ample evidence demonstrating that it lacked the level of control over Thornhill required to trigger liability. *Id.* Weyerhaeuser points out that the Master Services Contract between Defendants expressly defines Thornhill as an "independent contractor." *Id.* at 13. Further, Weyerhaeuser explains the contract provides that Thornhill will be "'solely responsible for the work,' is 'to manage and supervise all Work,' and is to manage 'employees and subcontractors.'" *Id.* Weyerhaeuser also references the depositions of Defendants' employees, which allegedly demonstrate the independent nature of their relationship. *Id.* at 13-15. Further, Weyerhaeuser contends that the "explicit language of the contract and the undisputed testimony of Thornhill and Weyerhaeuser employees" show that it never gave express or implied consent to Thornhill to engage in an unsafe practice. *Id.* at 14. In response, Plaintiffs argue that the independent contractor relationship only offers protection in the context of tort liability under

9

Article 2315 and in no way insulates Weyerhaeuser from liability under Article 667. R. Doc. 121 at 18-19.

In *Woods v. Apache Corp.*, this Court held that in an independent contractor scenario, Courts must assess "whether and to what extent the right to control work has been contractually reserved by the principal." No. 11-1928, 2013 WL 5673606, at *7 (E.D. La. Oct. 17, 2013) (quoting *Coulter v. Texaco, Inc.*, 117 F.3d 909, 912 (5th Cir. 1997)). "[A]bsent an express or implied order to the contractor to engage in an unsafe work practice leading to an injury, a principal . . . cannot be liable under the operational control exception." *Id.* at *8 (quoting *Coulter*, 117 F.3d at 912)). Weyerhaeuser has produced strong evidence that demonstrates it did not exercise the level of operational control required to trigger vicarious liability for the actions of Thornhill. In response, Plaintiffs vaguely assert that the operational control exception to vicarious liability cannot apply under Article 667. R. Doc. 121 at 18-19. However, the Court need not decide this issue because a genuine factual dispute remains as to whether Weyerhaeuser gave express or implied order to Thornhill to engage in an unsafe practice. The parties continue to dispute whether an oral agreement in which Weyerhaeuser agreed to refrain from spraying near Plaintiffs' property ever existed. The parties also dispute the distance specified in that alleged agreement and whether this was sufficiently conveyed to Thornhill before it sprayed on July 6, 2018. Therefore, summary judgment on this issue is not appropriate at this time.

C. **Whether Weyerhaeuser was negligent**

Weyerhaeuser argues that Plaintiffs' claims of negligence regarding Weyerhaeuser's actions and the activities of Thornhill fail as a matter of law. According to Weyerhaeuser, the facts show that Weyerhaeuser did not perform the spraying activity itself, Weyerhaeuser informed Thornhill of the presence of a "sensitive neighbor" nearby, and the spraying activity was not ultra-

hazardous. R. Doc. 83-1 at 12. Weyerhaeuser points to testing and expert testimony which allegedly demonstrates that Thornhill's spraying was "on target" and never infringed Plaintiffs' property. *Id.* at 12. In opposition, Plaintiffs argue that the "undisputed facts of this case" support Weyerhaeuser's liability under Article 2315 because Weyerhaeuser failed to warn Thornhill to maintain a spray buffer of one-fourth mile, failed to maintain records, and failed to warn Ms. Collett or Thornhill before the spraying incidents. R. Doc. 121 at 19. The Court previously denied summary judgment on this issue because "Plaintiffs' claim that someone at Weyerhaeuser might have been negligent in its communication with the sprayers regarding their 'sensitive neighbor,' combined with Weyerhaeuser's alleged oral promise, may be sufficient to establish liability under Article 667." R. Doc. 50 at 12.

Pursuant to Louisiana's general negligence statute, Article 2315, a plaintiff must prove five elements to establish that liability exists under the facts of a particular case: "(1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages." *S.J. v. Lafayette Parish Sch. Bd.*, 2009-2195 (La. 7/6/10), 41 So.3d 1119, 1125 (citing *Pinsonneault v. Merchants & Farmers Bank & Trust Co.,* 01–2217, p. 6 (La. 4/3/02), 816 So.2d 270, 275–76). The inquiry into whether a duty is owed is a question of law, while the inquiry into whether a defendant has breached a duty owed is a question of fact. *Id.* (internal citation omitted). The Court will accordingly assess whether genuine issues of material fact remain contested with regard to Weyerhaeuser's breach of an alleged duty to Plaintiffs.

After assessing the evidence and reviewing the facts, while also "drawing all inferences most favorable to the party opposing the motion [for summary judgment]," *Reid*, 784 F.2d at 578, the Court concludes that genuine issues of material fact remain with respect to Plaintiffs' negligence claims against Weyerhaeuser. First, it remains unclear whether a duty was ever owed to Plaintiffs to preemptively warn of the spraying so Plaintiffs could exit the premises. Furthermore, although Weyerhaeuser has pointed to evidence demonstrating that Thornhill never sprayed *on* Plaintiffs' property, Plaintiffs claim they smelled the spray inside their home. Second, the parties continue to disagree about the content and sufficiency of Weyerhaeuser's communications with Thornhill to warn of a "sensitive neighbor." Accordingly, the Court finds that genuine issues of material fact remain in relation to Weyerhaeuser's alleged negligence, and summary judgment is denied on this issue.

### D. <u>Whether Louisiana's Right to Farm Law bars Plaintiffs' Article 667 claim</u>

In addition to their claim under Art. 2315, the Plaintiffs argue that they also have a claim under Article 667. If damages are sought under Art. 667, the Plaintiff must prove negligence. When a negligence-related claim is brought under Article 667 the principal may be liable for the negligence of an independent contractor. Weyerhaeuser argues that Plaintiffs have not properly pleaded Article 667, and even if they had, a nuisance claim under Art. 667 is barred by the Louisiana's Right to Farm Law. R. Doc. 83-1 at 18. Weyerhaeuser contends it meets the elements of the right to farm law in that its operation is conducted in accordance with generally accepted agricultural practices, and Plaintiffs acquired legal interest in their land at least a decade after Weyerhaeuser acquired its land. *Id.* at 21. In the event that Plaintiff's Article 667 claim is not barred, Weyerhaeuser argues that the claim should be dismissed. *Id.* at 22. Weyerhaeuser points out that the standard under Article 667 is "is based upon what is reasonable to an ordinary citizen,"

but Plaintiffs, by their own admission, have described themselves as "hyper-sensitive and not of 'ordinary sensibilities.'" *Id.* at 22. In response, Plaintiffs argue that they properly pleaded an Article 667 claim, and there is no basis for Weyerhaeuser's assertion that all Article 667 actions are nuisance actions. R. Doc. 121 at 19-20. Plaintiffs believe their allegations sound in negligence, rendering the Louisiana Right to Farm Act inapplicable. *Id.* at 20.

After assessing the evidence and reviewing the facts, while also "drawing all inferences most favorable to the party opposing the motion [for summary judgment]," *Reid*, 784 F.2d at 578, the Court concludes that it remains unclear whether an Article 667 claim was ever properly pleaded. Even assuming that it was properly pleaded, the Court must determine whether Plaintiffs' Article 667 claim sounds in nuisance and is therefore barred by the Right to Farm Law. The Court will comprehensively address this issue in its forthcoming Order and Reasons regarding Plaintiffs' Partial Motion for Summary Judgment, which requests summary judgment on the applicability of the Right to Farm Law. R. Doc. 97.

E. **Whether genuine issues of material fact exist with regard to Thornhill's alleged negligence**

Thornhill asserts that "as a matter of law under these undisputed facts there can be no duty imputable to Thornhill to protect an unknow[sic] person, from an unknow[sic] risk, that purportedly can result because of an unknow[sic] chemical sensitivity…" R. Doc. 113 at 9. Instead of requesting summary judgment on Plaintiff's individual claims, Thornhill emphasizes the straightforward nature of this case and requests that it be dismissed from this lawsuit. R. Doc. 78-2. Thornhill claims that it was under contract with Weyerhaeuser to perform a task, and it performed that task pursuant to the instructions provided, which included maintaining a buffer of 100 feet or more from Plaintiffs' property. *Id.* at 1-5. Thornhill contends there is no evidence it

13

violated these instructions or that the herbicide it sprayed drifted onto Plaintiffs' property. *Id.* at 6-7. Accordingly, Thornhill requests that the Court dismiss all claims filed against it with prejudice. *Id.* at 1. In response, Plaintiffs allege that there are still a number of material facts in dispute, and Thornhill should not be able to avoid these issues by moving for summary judgment. R. Doc. 85. Plaintiffs also asserted numerous additional claims against Thornhill, but the Court will not address these at this time, as it is unclear whether they were properly pleaded in the original and amended complaints. The Court will instead focus on Plaintiffs' negligence-based claims against Thornhill in Plaintiffs' complaints.

After assessing the evidence and reviewing the facts, while also "drawing all inferences most favorable to the party opposing the motion [for summary judgment]," *Reid*, 784 F.2d at 578, the Court concludes that genuine issues of material fact remain with respect to Thornhill's alleged negligence under Article 2315. *Id.* There is a genuine dispute as to whether a duty between Thornhill and Plaintiff arose *after* the first spraying incident and whether Thornhill breached that potential duty. After its July 6, 2018 altercation with Gary Collett, Thornhill returned to Weyerhaeuser's property to spray the very next day. It is unclear whether that altercation generated a duty and whether Thornhill breached that alleged duty through its conduct. Accordingly, the Court will not grant summary judgment on Plaintiffs' negligence claims against Thornhill at this stage of the litigation.

## V.     CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant Weyerhaeuser Company's Motion for Summary Judgment, R. Doc. 83, and defendant Thornhill's Motion for Summary Judgment, R. Doc. 78, are **DENIED.**

New Orleans, Louisiana, on this 16th day of November 2020.

                                                                                _____
                                                                                     United States District Judge