UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DOROTHY GAIL COLLETT, ET AL.** | CIVIL ACTION |
| VERSUS | NO. 19-11144<br>C/W 19-12252 |
| **WEYERHAEUSER COMPANY, ET AL.** | SECTION "L" (5) |

## ORDER AND REASONS

Before the Court is Plaintiff Dorothy Gail Collett's Second Motion for Partial Summary Judgment, R. Doc. 97. On August 11, 2020, Defendant Weyerhaeuser filed an opposition to Plaintiff's motion, R. Doc. 114. Plaintiffs filed a reply on August 25, 2020, R. Doc. 120.

I.   **BACKGROUND**

Plaintiffs Dorothy Gail Collett and Joshua Collett ("Plaintiffs")[1] filed suit against Defendants Weyerhaeuser Company ("Weyerhaeuser"), Thornhill Forestry Service, Inc. ("Thornhill"), and Lafayette Insurance Company ("Lafayette Insurance") for damages they allegedly sustained from chemical exposure at their residence. R. Docs. 24 at 1, 3; 46 at 2–3. Specifically, Plaintiffs allege that their exposure to formaldehyde in the 1980s left them with severe immunological and autoimmune disorders and other health problems, forcing them to live in a highly controlled environment to control their symptoms. R. Docs. 24 at 2; 46 at 2–3. Because of this prior exposure and subsequent health problems, Dorothy Gail Collett contends she has communicated regularly with the Louisiana Department of Transportation and Development and Weyerhaeuser, a timberland company, to ensure these entities avoid spraying chemicals near her

---

[1] Although Dorothy Gail Collett and Joshua Collett have moved and continue to move the Court individually, the Court will collectively refer to them as "Plaintiffs" because their cases were consolidated in August 2019. R. Doc. 27.

property. R. Doc. 24 at 2. Plaintiffs aver that for 23 years, the Louisiana Department of Transportation has refrained from spraying within a two-mile radius of the Collett household, and for over 18 years, the local Weyerhaeuser office avoided spraying chemicals in this radius. R. Docs. 24 at 3; 46 at 2. However, Plaintiffs allege that on July 6, 2018, Thornhill, Weyerhaeuser's contractor, sprayed multiple chemicals in close proximity to the Collett residence. R. Docs. 24 at 3; 46 at 3. Plaintiffs further contend the Thornhill crew was approached to stop spraying the chemicals by various entities, but Thornhill refused to stop. R. Docs. 24 at 3; 46 at 3. Moreover, Plaintiffs contend that the crew returned again the following day and continued spraying. R. Docs. 24 at 3; 46 at 3.

Plaintiffs allege the spraying led to chemical exposure that caused multiple devastating illnesses to Dorothy Gail Collett and aggravated preexisting conditions in Joshua Collett, requiring them to seek medical treatment. R. Docs. 24 at 3; 46 at 3. Plaintiffs contend Defendants' acts and omissions amount to negligence, gross negligence, and violations of state statutes and regulations. R. Docs. 24 at 4; 46 at 3–4. Plaintiffs assert they have suffered and continue to suffer severe physical injury, mental anguish, and financial loss. R. Docs. 24 at 5; 46 at 4–5. Plaintiffs seek damages, a preliminary injunction prohibiting spraying of chemicals within a 2-mile radius of the Collett property during the pendency of this action, a permanent injunction prohibiting the spraying of chemicals within a 2-mile radius of the Collett property, and court costs, expert witness fees, attorney's fees and any other costs. R. Docs. 24 at 6–7; 46 at 6.

Weyerhaeuser denies the allegations and presents numerous affirmative defenses, including but not limited to the following: Plaintiffs' Petition fails to state a claim upon which relief can be granted; Plaintiffs' claims are barred by the applicable prescriptive periods or, alternatively, by the doctrine of laches; any injuries or damages to Plaintiffs were caused or

contributed to by independent, intervening, or superseding acts or omissions of others for whose acts Weyerhaeuser has no liability; any injuries or damages to Plaintiffs were caused, solely or in part, by Plaintiffs' own negligence or contributory negligence; Plaintiffs failed to exhaust administrative remedies; Plaintiffs' claims are barred by the doctrine of waiver and estoppel; and Plaintiffs failed to mitigate damages. R. Docs. 30; 49. Thornhill also denies the allegations and presents numerous affirmative defenses, including but not limited to the following: Plaintiffs' claims are prescribed and/or time barred; Plaintiffs' damages are the result of pre-existing conditions and/or causes unrelated to the incident(s) related to this litigation; Thornhill was not negligent and/or did not breach any duty owed to Plaintiffs; and the incident(s) sued upon were caused due to the fault and/or negligence of third parties. R. Doc. 19.

On June 9, 2020, Dorothy Gail Collett moved for partial summary judgment regarding Weyerhaeuser's liability under Louisiana Civil Code Article 667, titled "Limitations on the Use of Property." R. Doc. 74 at 1; La. Civ. Code art. 667 (2019). Plaintiffs argued that Weyerhaeuser's actions meet the elements of an action for damages under Article 667, and the material facts in support of this claim were undisputed. At the July 22, 2020 oral argument for this and other motions, the Court denied Plaintiffs' motion. The Court reasoned that summary judgment was premature because it was unclear if an Article 667 claim had been properly pleaded and because it was unclear whether the Louisiana Right to Farm Law ("RTFL") applied and therefore barred Plaintiffs' Art. 667 claim. R. Doc. 93. On July 31, 2020, Ms. Collett reurged its motion for partial summary judgment but on the narrower issue of applicability of the RTFL to actions brought under Art. 667.

## II.    PRESENT MOTION

Here, Plaintiffs seek "entry of a partial summary judgment striking and dismissing any reference to the RTFL as a defense to plaintiff's claims." R. Doc. 97 at 1. Plaintiffs proceed on two grounds: (1) Weyerhaeuser failed to plead the RTFL as an affirmative defense and (2) the RTFL does not apply to negligence-based actions. R. Doc. 97-1 at 2-3. First, Plaintiffs claim that Weyerhaeuser is barred from asserting an RTFL defense because it failed to plead it as an affirmative defense in its answers to Plaintiffs' complaints. *Id.* at 1-2. Plaintiffs cite Rule 8 of the Federal Rules of Civil Procedure in support. *Id.* at 2. Second, Plaintiffs assert that they "plainly and directly allege liability based on Weyerhaeuser's negligence," as evidenced by their amended answers to Weyerhaeuser's Interrogatories. *Id.* at 3, Exhibit A. Accordingly, Plaintiffs request that the Court grant summary judgment on this issue, thereby barring Weyerhaeuser from asserting an RTFL defense.

In response, Weyerhaeuser reasserts that (1) Plaintiffs never properly pleaded an Article 667 claim; (2) "Plaintiff is not prejudiced by Weyerhaeuser's Right to Farm Law defense;" and (3) Weyerhaeuser's RTFL defense only applies to Plaintiffs' nuisance claim—not Plaintiffs' negligence claims. R. Doc. 114 at 3-7. First, Weyerhaeuser asserts that an Article 667 claim was never properly pleaded because Plaintiffs' complaints do not mention Article 667. *Id.* Weyerhaeuser provides a timeline of the case to show that Plaintiffs never amended their complaints to state an Article 667 claim and Plaintiffs only ever raised this claim in response to Weyerhaeuser's motion for summary judgment. *Id.* at 3. Weyerhaeuser points out that it raised the RTFL defense only after Plaintiffs raised Article 667 in their opposition to the motion for summary judgment. *Id.* Weyerhaeuser also explains that it raised state law preemption in its July 9, 2019 answer to the complaint. *Id.* Second, Weyerhaeuser argues that under the applicable Fifth Circuit

case law, the timeliness and manner in which it raised the RTFL defense will not prejudice Plaintiffs. *Id.* at 6-7.

Third, Weyerhaeuser contends that it never argued that the RTFL bars all negligence claims in addition to nuisance claims. *Id.* at 7. Rather, Weyerhaeuser argues that negligence and nuisance are two distinct causes of action and "Plaintiff attempts to conflate the two" in order to bar Weyerhaeuser from asserting this defense. *Id.* Weyerhaeuser explains that the underlying purpose of the RTFL was to protect farmers against nuisance actions and argues that the RTFL is clear that it only applies to actions grounded in nuisance. *Id.* at 7-8. Further, Weyerhaeuser argues that any negligence-based Article 667 claim is barred for other reasons, such as Weyerhaeuser's lack of control exercised over Thornhill and "Plaintiff's inability to prove causation." *Id.* Weyerhaeuser alleges that Plaintiffs' attempt to use the same factual allegations in their nuisance and negligence claims because they do not understand the law. *Id.* at 8. Accordingly, Weyerhaeuser requests that the Court deny summary judgment on this issue. *Id.* at 9. Plaintiffs filed a reply to this motion but mainly reiterated their previous arguments. R. Doc. 120.

### III. APPLICABLE LAW

#### a. *Rule 56 Standard for Summary Judgment*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). When ruling on a motion for summary judgment, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Moreover, the court must assess the evidence and "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). But "unsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Anderson*, 477 U.S. at 249–50.

### b. Rule 8 Pleading Standards

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). Pursuant to Rule 8, a pleading must give a defendant fair notice of the claim and the grounds upon which the claim rests. *Arceneaux v. Blanchard Contractors*, No. CIV.A. 13-4841, 2013 WL 5329898, at *1 (E.D. La. Sept. 20, 2013) (citing *Dubuque Barge & Fleeting Serv.,* 2010 WL 1710372, at *2). "Pursuant to Rule 8(a), a complaint will be deemed inadequate only if it fails to (1) provide notice of the circumstances which give rise to the claim, or (2) set forth sufficient

6

information to outline the elements of the claim or permit inferences to be drawn that these elements exist." *General Star Indem. Co. v. Vesta Fire Ins. Co.*, 173 F.3d 946, 950 (5th Cir. 1999). Although a complaint does not need to include detailed factual allegations, it requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Rule 8(c) of the Federal Rules of Civil Procedure requires that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . estoppel." *Id.* Under Louisiana law, affirmative defenses include "negligence, or fault of the plaintiff and others, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, and any other matter constituting an affirmative defense." La. Code Civ. P. art. 1005. The purpose behind this rule "is to give fair notice of the nature of the defense and thereby prevent a last minute surprise to the plaintiff." *Bienvenu v. Allstate Ins. Co.*, 819 So. 2d 1077, 1080 (La. Ct. App. 4th 2002). Courts have discretion to determine whether a party is prejudiced or unfairly surprised by another's non-compliance with Rule 8(c) and to remedy that non-compliance by deeming a defense waived. *See Weiss v. Allstate Ins. Co.*, 512 F. Supp. 2d 463, 467 (E.D. La. 2007) ("technical failure to comply with Rule 8(c) is not fatal when the matter is raised in a manner that does not subject the plaintiff to unfair surprise").

### c. *Louisiana Civil Code Article 667*

Within Louisiana civil law, there is a body of law known as vicinage, which "impose[s] certain duties on landowners and occupiers of immovable property that are qualified in the Civil Code as 'legal servitudes' and as 'obligations' imposed by law independent of any agreement." Yiannapoulos, A.N., *Violations of the Obligations of Vicinage: Remedies Under Articles 667 and*

*669*, 34 La. L. Rev. 475, 476 (1974) [hereinafter *Obligations of Vicinage*]. Articles 667-669 of the Louisiana Civil Code are commonly referred to as the "vicinage articles". *Id.* Vicinage corresponds to some extent with common law nuisance, and Louisiana courts "have sought to develop an acceptable and working definition of the word 'nuisance' in the framework of civilian institutions." *Id.* at 488, 492. For example, Louisiana courts have often applied nuisance doctrine to justify the imposition of injunctive relief. *See* Maraist, Frank and Galligan, Thomas, *Burying Caesar: Civil Justice Reform and the Changing Face of Louisiana Tort Law*, 71 Tul. L. Rev. 339, 362-366 (1996) [hereinafter *Burying Caesar*]; *see also Robichaux v. Huppenbauer*, 258 La. 139, 245 So.2d 385 (1971). Despite their similarities, nuisance and vicinage are quite different, as nuisance is a branch of common law torts and the legal servitudes underlying vicinage are institutions of civil law property. *Obligations of Vicinage* at 489. Louisiana courts' efforts to use nuisance terminology and incorporate nuisance principles into vicinage-related cases have led to decreased clarity in the law.

      Article 667 in particular dates back to the Louisiana Civil Code of 1870 and requires a property owner to refrain from depriving one's neighbor of enjoyment of his property. *Obligations of Vicinage* at 475. Article 667 originally stated: "[a]lthough a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him." La. Civ. Code Art. 667 (amended 1996). Before it was amended in 1996, Art. 667 liability required only a showing of damage and causation, and the standard of liability was absolute liability. *Yokum v. 615 Bourbon Street, L.L.C.*, 2007-1785 (La. 2/26/08), 977 So.2d 859, 874 (La. 2008). This meant that under Art. 667, "one was strictly liable if this thing, animal, nondiscerning child, or building posed an unreasonable harm." *Burying Caesar* at 360. Louisiana courts have awarded both injunctive relief

and damages under Art. 667, likely because "'deprivation of liberty' and 'damage,' are joined disjunctively, and this may be taken to indicate the availability of injunctive relief as well as compensation." *Obligations of Vicinage* at 478. Louisiana courts have awarded damages arising from harms to movable and immovable property, as well as personal injuries in some instances. *Dean v. Hercules, Inc.*, 328 So.2d 69, 73 (La. 1976). However, late civil law scholar A.N. Yiannapoulos believed that the Civil Code redactors likely intended for damages to be sought under delictual obligations, rather than Art. 667 itself. *Obligations of Vicinage* at 478. Indeed, in nuisance cases, plaintiffs typically seek injunctive relief to curb the harmful activity. The frequent interplay between Article 667 and Article 2315, the primary source of delictual obligations in the Code, has led to confusion in Louisiana.

Toward the turn of the century, Louisiana courts began to question whether some or all types of common law nuisance constituted violations of Article 667. *Id.* Spurred by "the translation of the French commentators by the Louisiana Law Institute and the subsequent commitment to the interpretation of the Civil Code without reference to common law doctrine," Louisiana courts began to distance themselves from nuisance theory altogether. *Butler v. Baber*, 529 So.2d 374, 377 (La. 1988). In that same vein, perplexity ensued when Louisiana courts were faced with "ultrahazardous activities" and the choice between imposing delictual liability under Article 2315 or code-based liability under Art. 667. *Burying Caesar* at 363 (citing *McCastle v. Rollins Environmental Services of Louisiana Inc.*, 415 So.2d 515 (La. Ct. App. 1st Cir. 1982)). In 1996, the Louisiana legislature instituted significant tort reform aimed at clarifying this issue and curbing the pervasiveness of strict liability in the Code. *Id.* at 339; *Tort Reform—Elimination of Strict Liability for Damage Caused by Vice or Defect in Things or Buildings, by an Animal, or by Proprietor's Use of Own Property*, 1996 La. Sess. Law Serv. 1st Ex. Sess. Act 1 (H.B. 18). The

9

1996 amendment to Art. 667 inserted a negligence-based standard of liability into the law, making a proprietor answerable for damages upon showing a breach of duty. *Id.* The amendment preserved the absolute liability standard only for activities deemed "ultrahazardous." *Id.* The additions to Article 667 are bolded below:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. **However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care**. **Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. Nonetheless, the proprietor is answerable for damages without regard to his knowledge or his exercise of reasonable care, if the damage is caused by an ultrahazardous activity. An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives.**

La. Civ. Code Art. 667 (2019).

Louisiana courts continue to award injunctive relief and damages under the amended Art. 667, but plaintiffs are now required to prove negligence of the offending landowner to recover damages. This major change made Art. 667's language of more consistent with the law of delictual obligations, but in doing so created further confusion as to whether nuisance-based actions are still viable under Art. 667. *Burying Caesar* at 365. In their *Tulane Law Review* article titled *Burying Caesar: Civil Justice Reform and the Changing Face of Louisiana Tort Law*, Professors Frank Maraist and Thomas Galligan, Jr. address this question and conclude that the availability of nuisance-based actions under the amended Art. 667 is now limited to injunctive relief. *Id.* at 366. They point out that "a defendant who engages in what would be a 'nuisance' at common law [ ] may not necessarily be acting unreasonably." *Id.* Therefore, a nuisance victim who cannot also prove negligence is barred from recovering damages under Art. 667. *Id.* However, "a plaintiff

10

seeking to enjoin a nuisance apparently would not be so limited," because the negligence standard only applies to actions seeking damages. *Id.*

### a. Louisiana's Right to Farm Law

Like many other states, Louisiana enacted its own right to farm law to protect "agricultural operations, including forest and timber operations, and the public, which depends upon agricultural production [ ] from any nuisance actions." La. R.S. 3:3601(B)(3). The Louisiana RTFL was first enacted in 1983 and states:

> The legislature hereby declares that persons who are engaged in agricultural operations in accordance with generally accepted agricultural practices or traditional farm practices should be protected from legal actions brought by persons who subsequently acquire an interest in any land in the vicinity of the agricultural operation and from any nuisance action, public or private, against the agricultural production of an agricultural product or an agricultural operation including but not limited to, agricultural processing, and any agricultural activity involved, directly or indirectly, in the production of food for human consumption or for animal food.

La. R.S. 3:3603(A) (2019). The RTFL explicitly states that "[n]o agricultural operation shall be deemed to be a nuisance in any action brought under the provisions of Civil Code Article 669, R.S. 33:361, R.S. 40:14, or any other grant of authority authorizing the suppression or regulation of public or private nuisances…." La. R.S. 3:3603(B). The statute also states that it "shall not apply to actions based on negligence, intentional injury, or violation of state or federal law or rules." La. R.S. 3:3606. Although it was amended in 2008, the statute does not define "nuisances" and remains silent on whether the RTFL applies to Art. 667 actions.

To date, there is scant jurisprudence and scholarly guidance addressing whether the RTFL bars nuisance-based actions under Article 667. The only case in which a Louisiana court dealt with the application of the RTFL to an Article 667 action was in the 1998 Louisiana Fifth Circuit case *Trosclair v. Matrana's Produce, Inc.* (La.App. 5 Cir. 8/25/98); 717 So.2d 1257. In this case, the Louisiana Fifth Circuit reversed the trial court's dismissal of plaintiff's Arts. 667-669 claims on

11

the basis of no cause of action. *Id.* at 1258. Plaintiff alleged that defendant's "produce business across the street from his residence [ ] was emanating noise" and was therefore a nuisance. *Id.* The Louisiana Fifth Circuit reversed the trial court's dismissal, holding that "the trial court erred in maintaining the exception" because RTFL implicates issues that must first be decided by a trier of fact. *Id.* at 1259. The Louisiana Fifth Circuit took no position on whether the RTFL barred plaintiff's Art. 667 claims.

IV. **DISCUSSION**

First, the Court will address the issue of whether Art. 667 was properly pleaded by the Plaintiffs. Plaintiffs did not specifically plead an Art. 667 in their original complaint or in their two amended complaints. R. Docs. 1-2; 8; 24. Indeed, the first time Plaintiffs raised this specific claim was on October 17, 2019, in their opposition memoranda to Weyerhaeuser's motion for summary judgment. R. Docs. 40 at 1; 41 at 1. However, Plaintiffs broadly alleged negligence in their initial and amended complaints. R. Docs. 1-2; 8; 24. Because the amended Article 667 permits both negligence and nuisance-based actions and the pleading standards of Rule 8 of the Federal Rules of Civil Procedure are broad, the Court concludes that Plaintiffs properly pleaded an Art. 667 claim to the extent they allege negligence on the part of Defendants. Additionally, the Court continued the discovery deadline and trial date in this case to February 8, 2021 and March 22, 2021, respectively. R. Doc. 136. Accordingly, the timing with which Plaintiffs raised their Art. 667 claim does not prejudice Defendants. After assessing the evidence and reviewing the facts, while also "drawing all inferences most favorable to the party opposing the motion [for summary judgment]," *Reid*, 784 F.2d at 578, the Court concludes that there are no genuine issues with respect to whether Plaintiffs' Art. 667 claim was properly pleaded in the negligence context.

Next, the Court will address whether Weyerhaeuser properly raised the RTFL as an affirmative defense. Weyerhaeuser did not explicitly raise the RTFL until November 14, 2019, in its affirmative defenses to Joshua Collett's Second Amended Petition. R. Doc. 49 at 7. Plaintiffs appear to take issue with the fact that Weyerhaeuser raised this as an affirmative defense only in response to Joshua Collett's complaint and not to Dorothy Collett's complaint, which they consider to be the operative petition. The Court finds this argument unconvincing, as the Colletts' cases were consolidated in August 2019. R. Doc. 27. Additionally, Weyerhaeuser included the more general affirmative defense of state law preemption in its answers to Gail Collett's original and second amended complaints. R. Docs. 12 at 7; 30 at 7. The current trial and discovery deadlines ensure that the Plaintiffs will not be prejudiced by raising this defense. After assessing the evidence and reviewing the facts, the Court concludes that no genuine issues of material fact remain regarding Weyerhaeuser's RTFL defense. Accordingly, the Court considers the RTFL to be a properly pleaded affirmative defense.

After assessing the evidence and reviewing the facts, while also "drawing all inferences most favorable to the party opposing the motion [for summary judgment]," *Reid*, 784 F.2d at 578, the Court concludes that no genuine issues of material fact remain with respect to the applicability of the Right to Farm Law to this action. Regarding the nature of Art. 667 actions, the Court concludes that the amended Art. 667 is now a hybrid of nuisance and negligence law. *Burying Caesar* at 366. Article 667 contains a negligence-based liability standard for plaintiffs seeking damages and preserves its vicinage and nuisance-based foundations for actions seeking injunctive relief. Accordingly, Art. 667 actions where injunctive relief is sought sound in nuisance and the traditional obligations of vicinage, and actions where damages are sought sound in negligence and its delictual liability counterpart. Therefore, the RTFL does not preclude Plaintiffs' Art. 667 claim

13

as it relates to damages but precludes Plaintiffs' Art. 667 claim to the extent Plaintiffs seek injunctive relief under the statute.

## V. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Plaintiff Dorothy Gail Collett's Second Motion for Partial Summary Judgment, R. Doc. 97, is **GRANTED IN PART AND DENIED IN PART.** The motion is **DENIED** with respect to Plaintiffs' assertion that Weyerhaeuser failed to properly raise the RTFL as an affirmative defense. The motion is **GRANTED** regarding Plaintiffs' assertion that the RTFL does not apply to actions grounded in negligence, which includes Art. 667 actions where damages are sought. The motion is **DENIED** with respect to Plaintiffs' assertion that the RTFL defense is completely inapplicable to their Art. 667 claim, as the RTFL precludes Plaintiffs' Art. 667 action to the extent they seek injunctive relief under the statute.

New Orleans, Louisiana, this 19th day of November 2020.

_____
United States District Judge