UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DOROTHY GAIL COLLETT, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-11144**<br>**C/W 19-12252** |
| **WEYERHAEUSER COMPANY, ET AL.** | **SECTION "L" (5)** |

ORDER AND REASONS

Before the Court is Defendant Weyerhaeuser's Motion to Exclude Physicians, R. Doc. 81. Defendants filed an opposition to Plaintiff's motion, R. Doc. 118. Plaintiffs filed a reply, R. Doc. 125. On October 14, 2020, the Court held oral argument on this motion. The Court now rules as follows:

I.  BACKGROUND

Plaintiffs Dorothy Gail Collett and Joshua Collett ("Plaintiffs") filed suit against Defendants Weyerhaeuser Company ("Weyerhaeuser"), Thornhill Forestry Service, Inc. ("Thornhill"), and Lafayette Insurance Company ("Lafayette Insurance") for damages they allegedly sustained from chemical exposure at their residence. R. Docs. 24 at 1, 3; 46 at 2–3. Specifically, Plaintiffs allege that their exposure to formaldehyde in the 1980s left them with severe immunological and autoimmune disorders and other health problems, forcing them to live in a highly controlled environment to control their symptoms. R. Docs. 24 at 2; 46 at 2–3. Because of this prior exposure and subsequent health problems, Dorothy Gail Collett contends she has communicated regularly with the Louisiana Department of Transportation and Development and Weyerhaeuser, a timberland company, to ensure these entities avoid spraying chemicals near her property. R. Doc. 24 at 2. Plaintiffs aver that for 23 years, the Louisiana Department of

Transportation has refrained from spraying within a two-mile radius of the Collett household, and for over 18 years, the local Weyerhaeuser office avoided spraying chemicals in this radius. R. Docs. 24 at 3; 46 at 2. However, Plaintiffs allege that on July 6, 2018, Thornhill, Weyerhaeuser's contractor, sprayed multiple chemicals in close proximity to the Collett residence. R. Docs. 24 at 3; 46 at 3. Plaintiffs further contend the Thornhill crew was approached to stop spraying the chemicals by various entities, but Thornhill refused to stop. R. Docs. 24 at 3; 46 at 3. Moreover, Plaintiffs contend that the crew returned again the following day and continued spraying. R. Docs. 24 at 3; 46 at 3.

Plaintiffs allege the spraying led to chemical exposure that caused multiple devastating illnesses to Dorothy Gail Collett and aggravated preexisting conditions in Joshua Collett, requiring them to seek medical treatment. R. Docs. 24 at 3; 46 at 3. Plaintiffs contend Defendants' acts and omissions amount to negligence, gross negligence, and violations of state statutes and regulations. R. Docs. 24 at 4; 46 at 3–4. Plaintiffs assert they have suffered and continue to suffer severe physical injury, mental anguish, and financial loss. R. Docs. 24 at 5; 46 at 4–5. Plaintiffs seek damages, a preliminary injunction prohibiting spraying of chemicals within a 2-mile radius of the Collett property during the pendency of this action, a permanent injunction prohibiting the spraying of chemicals within a 2-mile radius of the Collett property, and court costs, expert witness fees, attorney's fees and any other costs. R. Docs. 24 at 6–7; 46 at 6.

Weyerhaeuser denies the allegations and presents numerous affirmative defenses, including but not limited to the following: Plaintiffs' Petition fails to state a claim upon which relief can be granted; Plaintiffs' claims are barred by the applicable prescriptive periods or, alternatively, by the doctrine of laches; any injuries or damages to Plaintiffs were caused or contributed to by independent, intervening, or superseding acts or omissions of others for whose

acts Weyerhaeuser has no liability; any injuries or damages to Plaintiffs were caused, solely or in part, by Plaintiffs' own negligence or contributory negligence; Plaintiffs failed to exhaust administrative remedies; Plaintiffs' claims are barred by the doctrine of waiver and estoppel; and Plaintiffs failed to mitigate damages. R. Docs. 30; 49. Thornhill also denies the allegations and presents numerous affirmative defenses, including but not limited to the following: Plaintiffs' claims are prescribed and/or time barred; Plaintiffs' damages are the result of pre-existing conditions and/or causes unrelated to the incident(s) related to this litigation; Thornhill was not negligent and/or did not breach any duty owed to Plaintiffs; and the incident(s) sued upon were caused due to the fault and/or negligence of third parties. R. Doc. 19.

## II.    PRESENT MOTION [R. Doc. 81]

On July 13, 2020, Weyerhaeuser filed the instant motion to exclude several physicians from testifying at trial in this case, R. Doc. 81, and the Court held oral argument on October 14, 2020. Weyerhaeuser moves to exclude testimony of the three doctors who were previously offered as fact witnesses by Plaintiffs: Dr. Stephanie Cave, Dr. Mark James, and Dr. Stephanie McCarter. *Id.* at 1. Weyerhaeuser bases its motion on two primary claims: (1) the doctors were not properly designated pursuant to the Federal Rules of Civil Procedure and the Federal Rules of Evidence; and (2) the doctors' testimony lacks reliability and relevance under *Daubert*. *Id.* Plaintiffs respond arguing that Dr. Cave and Dr. James produced materials that meet the requirements of the Federal Rules and that their opinions satisfy the relevance and reliability requirements of *Daubert*. *Id.* at 14-20. Therefore, Plaintiffs argue that Dr. James and Dr. Cave should be allowed to testify as treating physicians. *Id.* At the September 2, 2020 oral argument regarding unrelated motions, Plaintiff's counsel clarified that Plaintiffs are now only offering Dr. Cave and Dr. James and will no longer seek to introduce Dr. McCarter as an expert in this case.

Plaintiff's counsel also noted that the Dr. Cave and Dr. James will only be offered in connection with Dorothy Gail Collett's alleged injuries and not Joshua Collett's. *See also* R. Doc. 118 at 1. Weyerhaeuser's motion will be evaluated in view of this updated information.

### III. LAW AND ANALYSIS

#### a. Expert Disclosure

Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure requires that "[i]n addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). Further, "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," Rule 26(a)(2)(B) requires that the expert disclosure be accompanied by a written report that is prepared and signed by the witness. Fed. R. Civ. P. 26(a)(2)(B). This rule contains a list of requirements that an expert report must follow. *See id.* Fed. R. Civ. P. 26(a)(2)(B) provides that witnesses for whom expert reports are not required must issue a disclosure containing the subject matter the witness will testify about, as well a summary of facts and opinions. Fed. R. Civ. P. 26(a)(2)(C)(i)-(ii). Typically, a case's scheduling order will include expert disclosure deadlines.

#### b. Daubert Standard

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Rule 702 is in effect a codification of the United States Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In *Daubert*, the Supreme Court held that trial courts should serve as gatekeepers for expert testimony and

should not admit such testimony without first determining that the testimony is both "relevant" and "reliable." *Id.* at 589.

As gatekeeper, the trial court has a special obligation to ensure that any and all expert testimony meets these standards. *Id.* Accordingly, it must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether the reasoning or methodology can be properly applied to the facts in issue. *Id.* at 592-93. In making this assessment, the trial court need not take the expert's word for it. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 147 (1997). Instead, when expert testimony is demonstrated to be speculative and lacking in scientific validity, trial courts are encouraged to exclude it. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 279 (5th Cir. 1998). However, the Court must approach its gatekeeper duty "with proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Id.* "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attaching shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

In satisfying its "gatekeeper" duty, the Court will look at the qualifications of the experts and the methodology used in reaching their opinions and will not attempt to determine the accuracy of the conclusion reached by the expert. The validity or correctness of the conclusions is for the fact finder to determine after the *Daubert* analysis. Scientific testimony is relevant only if the expert's reasoning or methodology can be properly applied to the facts in issue, meaning that there is an appropriate fit between the scientific testimony and the specific facts of the case. *Daubert,* 509 U.S. at 593, 113 S.Ct. 2786. Scientific evidence is irrelevant, however, when there is too great

an analytical gap between the data and the opinion proffered. *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

In *Daubert,* the Supreme Court set forth a non-exclusive list of factors to consider in determining the scientific reliability of expert testimony. *Id.* at 593-95, 113 S. Ct. 2786. These factors are: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) the general acceptance of the methodology in the scientific community. *Id.* Whether some or all these factors apply in a particular case depends on the facts, the expert's particular expertise, and the subject of his testimony. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 138, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

### IV. DISCUSSION

In the present case the plaintiffs allege that as a result of the defendants' negligence they were exposed to specific chemicals which has caused certain maladies and they have filed the current lawsuit against the defendants to recover monetary damages. When the allegations in a lawsuit involve claims of injuries resulting from chemical exposure, expert medical testimony is required to prove causation. *See, e.g., Million v. Exxon Mobil Corp./Exxon Chem. Co.*, CV 17-00060, 2019 WL 6617400, at *2 (M.D. La. Dec. 5, 2019), *aff'd sub nom. Million v. Exxon Mobil Corp.*, 20-30002, 2020 WL 7054051 (5th Cir. Dec. 1, 2020); *Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 723 (5th Cir. 2009) (emphasis added); *Allen v. Pennsylvania Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996); *Talbot v. Elec. Ins. Co.*, No. CV 17-299-SDD-EWD, 2018 WL 6274314, at *2 (M.D. La. Nov. 30, 2018) (citing *Johnson v. E. I. DuPont de Nemours & Co.*, 7 So 3d 734, 740 (La. App. 2009)).

Under Rule 26 of the Federal Rules of Civil Procedure there are two types of medical experts who are allowed to testify in a court proceeding. First, there are experts who have been retained by a party and must produce reports pursuant to 26(a)(2)(B), and second, there are experts such as treating physicians who are not retained and do not have to produce a report. 26(a)(2)(c); *see also* Advisory Committee Notes, 1993 Amendment, Subdivision (a), Paragraph (2). In lieu of a report, the treating physician's records, summaries of the treatment, or a letter or summary report is produced containing information sufficient to allow opposing counsel to understand the scope of the expected testimony and supplement the information with a pretrial deposition.

Regardless of whether a doctor is proffered as a retained expert under 26(a)(2)(B) or as a non-retained expert such as a treating physician, each must meet the standards of Federal Rule 702 and *Daubert*. *See Tajonera, et al. v. Black Elk Energy Offshore Operations, LLC, et al.*, NO. 13-0366, 2016 WL 3180776 at *7 (E.D. La. June 7, 2016) ("Treating physicians are no different than any other expert for purposes of Rule 702; before proffering expert testimony, they must withstand *Daubert* scrutiny like everyone else." (quoting *Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 704 (7th Cir. 2015)); *see also Seymore v. Penn Mar. Inc.*, 281 Fed. Appx. 300, 301 (5th Cir. 2008); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244-245 (5th Cir. 2002). The threshold 702/Daubert inquiry is whether the expert is qualified to offer relevant and reliable expert testimony on the particular matter at issue. *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp 2d 771, 798 (E.D. La 2011). Ultimately, a party seeking to introduce expert testimony must show that the witness is qualified by education, training, or experience to give relevant and reliable testimony and that (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the

facts of the case. Federal Rules of Evidence, Rule 702; *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007).

The Plaintiffs have not produced any 26(a)(2)(B) expert reports for either Dr. Cave or Dr. James claiming that these two doctors are the Plaintiff's treating physicians. The evidence supports the conclusion that Dr. James satisfies this status since he or his office colleague has a long history of treating the Plaintiffs. (James Depo. P 12 L 1-25). However, the evidence does not indicate that Dr. Cave was a treating physician for either of the plaintiffs. Over ten years prior to the event giving rise to the present lawsuit, Dr. Cave spoke to Dorothy Gail Collett regarding an unrelated matter and referred her to another physician. The first time Dr. Cave actually saw Ms. Collett for her present maladies was over a year following the complained of event, and this was apparently at the request of Plaintiff 's counsel since he arranged and paid for the visit. Dr. Cave has never treated Joshua and first saw him after the start of the litigation, and only after his attorney had paid her and asked her to write a letter for the litigation. Dr. Cave is clearly a retained expert under Rule 26 and must produce a report before being allowed to testify. Thus, failing to produce a 26(a)(2)(B) report would in itself disqualify Dr. Cave from testifying in this case. But one might argue that the extensive multi-hour deposition of Dr. Cave removed any potential uncertainty about her expected testimony and thus removed any prejudice to the defendant and thereby corrected any deficiency. But even if this requirement were waived, this is not the only problem presented by Dr. Cave's testimony. She, as well as Dr. James, must also satisfy Rule 702 and the *Daubert* standards. It is therefore appropriate to test the proposed testimony of these doctors by conducting a "Rule 702/*Daubert*" analysis.

The threshold 702/Daubert inquiry considers whether an expert has sufficient qualifications by education, training, or experience to offer relevant and reliable testimony on the issues presented in the case.

Dr. Cave operates a medical practice and vitamin sales operation in Baton Rouge, Louisiana, called Cypress Integrative Medicine. She is board-certified in family medicine but practices integrative and functional family medicine. She supports the use of vitamins rather than traditional medicines. She has not admitted any patient to a hospital in twenty years (Dr. Cave Depo. P. 71 L 15). She is not an immunologist, toxicologist, neurologist, or epidemiologist. She has never testified in a chemical exposure case.

Dr. James is a family medicine doctor with a practice in Folsom, Louisiana, who has seen Gail Collett since 2010 and Joshua since 1991. (James Depo. P 12 L 1-25). Dr. James is not an immunologist, toxicologist, pulmonologist, or an expert in pesticides or meteorology. (James Depo. P.17 L7-25).

A significant issue in this case is whether there is relevant and reliable testimony on the issue of causation. The Fifth Circuit has a two-step process for examining the admissibility of causation evidence in toxic tort cases. *See Knight v. Kirby Inland Marine Inc.*, 482 F3d 347, 351 (5th Cir 2007). First, the trial court must determine whether there is general causation. General causation is the determination of whether a substance is capable of causing a particular injury or condition in the general population. Once general causation is established then the court must determine whether there is admissible specific causation evidence.

In determining general causation in chemical exposure cases, courts often look, at least in part, to whether there are any peer reviewed epidemiological or controlled studies that connect the alleged malady to an exposure to the chemical at issue. *See Johnson v. Arkema, Inc.*, 685 F.3d 452,

460 (5th Cir 2012). Dr. Cave and Dr. James both admit that they have not seen or read any literature, including peer reviewed or controlled studies, that connects an exposure to Arsenal AC to the litany of symptoms the Colletts allege. (Cave Depo. P 52 L4- 54 L7; James Depo. P 21 L8-13). Not only do these doctors not know of any research or studies that connect Arsenal and to the Colletts' symptoms, the doctors never reviewed the Arsenal label or any related information from the EPA about its toxicity (if any) at the time they saw the Colletts. (Cave Depo. P52 L13- 54 L7; James Depo. P19 L8-11). Furthermore, they have not reviewed the federal publications that discuss the degree or level of toxicity of the product at issue. Neither doctor considered any evidence to determine whether the substance at issue is capable of causing an injury.

Some of the factors courts look to under *Daubert* to support the specific causation inquiry are: (1) whether the expert's opinion is based on an accurate dosage or duration data; (2) whether the expert has identified the specific mechanism by which the product causes the alleged disease; (3) whether the expert has justifiably extrapolated from an accepted premise to an unfounded conclusion; (4) whether the expert has adequately accounted for alternative explanations; and (5) whether the expert intends to testify about matters growing directly out of research he or she has conducted independent of the litigation. *In Re Vioxx Prods Liab Litig.*, 401 F. Supp. 2d 565, 573 (E.D. La. 2005).

The evidence revealed that Dr. James did not even know what substance was sprayed. (James Depo. P19 L8-11). Both Dr. Cave and Dr. James admit that they did not know the concentrations of Arsenal AC sprayed (Cave Depo. P51 L14-24) (James Depo. P 22 L1-4). Dr. James did not know the method of the spraying. (James Depo. P20 L20- P21 L7). Dr. Cave did not know the duration of the spraying, and she wrote her February 2020 letter under the belief that the exposure was still ongoing when Ms. Collett came to see her fourteen months after the spraying

had ceased. (Cave Depo. P143 L15-25). The doctors do not know how far away the spraying was happening or the wind direction that day, all elements needed to determine the dose and duration of the Colletts' exposure. (Cave Depo. P50, L7-19; P 75 L23-25; P 213 L20- P 214 L14); James Depo. P 22 L 5-8; P 66 L 15-20). Additionally, neither Dr. Cave nor Dr. James conducted any sort of testing on either Gail or Joshua Collett to determine if they had a reaction to the specific chemicals at issue or any other chemicals (Cave Depo. P105 L25- 106 L3; James Depo. P 40 L16-19).

Furthermore, one of the factors courts consider under *Daubert* for specific causation is whether the expert has adequately accounted for alternative explanations. In addition to a total lack of information on actual dose and duration of exposure, neither doctor took into account the possible alternatives. There may be a myriad of possibilities to explain their reported symptoms that do not involve Arsenal AC. Further, nothing was done by these doctors to eliminate other causes or even to determine them.

It is clear that other than the Plaintiffs' complaints, neither Dr. Cave nor Dr. James has any other basis for concluding that the Plaintiffs' maladies were caused by their exposure to Arsenal AC, the product involved in this case. Dr. James indicated that he cannot say with any degree of scientific certainty that Ms. Collett's symptoms were caused by Thornhill's spraying. (James Depo. P 42 L9-14; P 46 L 18-47).  Dr. James admitted that Gail Collett suffered from skin, respiratory infections, and mononucleosis prior to the July 2018 spraying. (James Depo. P 50 L1-P54 L18). Certainly, both of these doctors are qualified to practice family medicine, but the critical issue in this case is whether either should be allowed to testify and give expert testimony as to the causal relationship between the spraying of the chemical Arsenal AC and the maladies claimed by the Plaintiffs.

At the outset, however, it must be noted that their education, training and experience regarding the significance or effect of chemical exposure is somewhat wanting. Neither one is either an immunologist, toxicologist, neurologist, or epidemiologist, and there is no evidence to even suggest that either doctor has had any experience with the chemical involved in this case.

Furthermore, neither doctor has provided an expert report as required by Rule 26, and this alone would justify excluding them, particularly with regard to Dr. Cave. But even if this requirement were somehow considered satisfied, the methodologies used by Dr. Cave and Dr. James simply do not satisfy the requirements of Rule 702 and *Daubert*. Neither doctor knows the duration of exposure or the dose of exposure. Neither has identified the specific mechanism by which the product causes the alleged disease. Neither doctor has conducted any tests, consulted any scientific publications regarding either general or specific causation of any malady related to the product, considered any other causes of plaintiffs' complaints, or determined whether their methodology was generally accepted in the scientific community. Therefore, neither may testify as an expert witness as to the causal relationship between the Plaintiffs' complaints and exposure to the product at issue. Dr. James, however, may testify as a fact witness as to the nature of the Plaintiffs' complaints, the treatment he has administered, and any charges he has made for his treatment.

## V.   CONCLUSION

For the aforementioned reasons,

**IT IS HEREBY ORDERED** that Defendant Weyerhaeuser's Motion to Exclude Physicians, R. Doc. 81, is **GRANTED**. Dr. James and Dr. Cave may not testify as expert witnesses as to causation in this case.

New Orleans, Louisiana, this 8th day of January 2021.

_____
U.S. District Judge Eldon E. Fallon